UNITED STATES of America

v.

Richard MASTRANGELO, Defendant.

No. 80 Crim. 285.

United States District Court,
E. D. New York.

Feb. 24, 1982.

Edward R. Korman, U.S. Atty., Brooklyn, N.Y. (William J. Muller, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for plaintiff.

Graham Hughes, New York City (Michael Coiro, of counsel, Gerald L. Shargel, New York City, on brief), for defendant.

## MEMORANDUM AND ORDER

McLAUGHLIN, District Judge.

This is an application by the Government, pursuant to Federal Rule of Evidence ("F.R.E.") 804(b)(5) and Federal Rules of Criminal Procedure 12 and 57(b), for a pre-trial ruling that the Grand Jury testimony and exhibits of James Bennett will be admissible at the trial of the defendant. The defendant is charged with conspiracy, with importation of and possession with intent to distribute over 23 tons of marijuana and almost half a million methaqualone tablets and with obstruction of Justice. The only evidence linking the defendant to the drug counts is his purchase of four trucks, seized by the Federal agents, which were loaded with the drugs. James Bennett's Grand Jury testimony is necessary to identify the defendant as the purchaser of the trucks.

BACKGROUND

On April 27, 1981, a trial on the drug charges[1] against Mastrangelo and a co-conspirator, Joseph Dazzo, commenced before Chief Judge Weinstein. Two days later, James Bennett, the only witness who could link Mastrangelo to the drugs, was murdered just hours before he was scheduled to

---

1. Ten other co-defendants were tried on January 26, 1981.

testify. Chief Judge Weinstein declared a mistrial as to Mastrangelo.[2]

Mastrangelo moved for dismissal of the indictment on double jeopardy grounds, but Chief Judge Weinstein denied the motion. He found that "by a preponderance of the evidence" Mastrangelo either ordered the killing of Bennett, or knew about it and acquiesced. The Second Circuit affirmed Judge Weinstein's decision on October 28, 1981.[3] *United States v. Mastrangelo*, Dkt. No. 81–1270 (2d Cir. October 28, 1981). 662 F.2d 946. The second jury trial is scheduled to begin on February 22, 1982.

DISCUSSION

The Government argues that Bennett's Grand Jury testimony will be admissible under F.R.E. 804(b)(5).[4] It also claims that its admission will not violate the Confrontation Clause of the Sixth Amendment because the testimony is necessary to the Government's case and because it is imbued with overwhelming circumstantial guarantees of trustworthiness. The defendant counters that its admission is flatly prohibited by the Confrontation Clause, as construed in *United States v. Fiore*, 443 F.2d 112 (2d Cir. 1971), *cert. denied*, 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973).

I begin by noting that "[t]he confrontation clause is not merely the equivalent of the hearsay rules." *United States v. Wright*, 588 F.2d 31, 37 (2d Cir. 1978); *see Dutton v. Evans*, 400 U.S. 74, 81–82, 91 S.Ct. 210, 215–216, 27 L.Ed.2d 213 (1970). Nevertheless, recognizing the "truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values' ... and 'stem from the same

roots,'" the Supreme Court has sanctioned the use of hearsay in spite of the Confrontation Clause where certain requirements are met. *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), *quoting, California v. Green*, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1977); *Dutton v. Evans*, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970). The rules are summarized succinctly in *Ohio v. Roberts*:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness. ·

448 U.S. at 66, 100 S.Ct. at 2539.

In this case, the declarant, James Bennett, is obviously unavailable. Indeed, although this is not dispositive, there is a finding by the prior trial judge that the defendant was implicated in the murder of Bennett, a finding characterized by the Second Circuit as "understandable." *United States v. Mastrangelo*, 662 F.2d 946, at 950 (2d Cir. 1981). Thus, the only question remaining is whether the Government has satisfied the requirement of demonstrating "indicia of reliability" by a "showing of particularized guarantees of trustworthiness."[5] I find that it has.

---

2. The trial against Dazzo continued, culminating in a conviction.

3. Mastrangelo filed an application for a rehearing *en banc* which was denied by the Second Circuit on December 21, 1981.

4. F.R.E. 804(b)(5) provides for the admissibility of:

> A statement not specifically covered by any of the foregoing [hearsay] exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more

probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

5. I thus reject defendant's contention that Grand Jury testimony may be admitted without offending the Confrontation Clause only where there is clear and convincing evidence that the defendant has waived his Sixth Amendment rights. Under current constitutional doctrine, no such waiver need be found.

The Government has demonstrated that Bennett had no motive to testify falsely. He was merely a witness. He was not under investigation as a participant in the crime (*see* Government's Pretrial Memorandum, Exhibit D). He had not been granted immunity (*see* Government's Pretrial Memorandum at 15). He testified under penalty of perjury. He had first-hand knowledge of the events to which he testified. He reaffirmed his statements several times to assistant United States Attorneys and to DEA agents, both before and after he testified. At no point did he ever recant his story. *See* Government's Pretrial Memorandum, Exhibits C, D and E. In addition, there are business records which tend to corroborate Bennett's testimony, as well as a tape recording of a conversation between Mastrangelo and Bennett that strongly corroborates Bennett's Grand Jury testimony. There is independent authentication of the voice on the tape as that of Mastrangelo.

Taken together, these factors clearly provide the "particularized guarantees of trustworthiness" required by the Supreme Court. I hold, therefore, that the introduction of Bennett's Grand Jury testimony will not violate the Sixth Amendment.[6] Indeed, this result has been reached by every other circuit faced with this precise problem. *See United States v. Thevis*, 665 F.2d 616 (5th Cir. 1982); *United States v. West*, 574 F.2d 1131 (4th Cir. 1978). *See also United States v. Balano*, 618 F.2d 624 (10th Cir. 1979); *United States v. Garner*, 574 F.2d 1141 (4th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333,

58 L.Ed.2d 333 (1978); *United States v. Carlson*, 547 F.2d 1346 (8th Cir. 1976). *See generally* Annotation, Admissibility of Testimony Before Grand Jury of Unavailable Witness Under Rule 804(b)(5), 50 A.L.R. 848 (1980).

Turning from the constitutional to the evidentiary issues, I believe that the requirement of F.R.E. 804(b)(5) that a statement have "circumstantial guarantees of trustworthiness" has also been satisfied. I find in addition that the other requirements of F.R.E. 804(b)(5) have also been met. The materiality and relevance of the statements identifying Mastrangelo cannot be disputed. The grand jury testimony is offered to link Mastrangelo, as the purchaser of the trucks in which the drugs were found, to the crimes charged in the indictment. *See also* F.R.E. 401. The testimony is more probative on the issue whether Mastrangelo was the purchaser of the trucks involved than any other evidence. Finally, there is no doubt in my mind that the interest of justice will be best served by introduction of Bennett's Grand Jury testimony. *See United States v. West*, 574 F.2d 1131 (4th Cir. 1978).

For all of the above reasons, the Government's application is granted.[7]

SO ORDERED.

---

**6.** The defendant argues that the Second Circuit case, *United States v. Fiore*, 443 F.2d 112 (2d Cir. 1971), *cert. denied*, 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973), is controlling. In *Fiore*, the Second Circuit held that it was error for a trial judge to admit the grand jury testimony of a witness who was available but who refused to testify. The Court ruled that the testimony was not admissible under the then proposed Federal Rules of Evidence and that its admission violated the Confrontation Clause. I find the case distinguishable principally because in *Fiore* there was a serious question about the reliability of the testimony. In effect, the *Fiore* witness was recanting his Grand Jury testimony. Moreover, the *Fiore* case was decided before the *Dutton* case and its progeny had erected the constitutional scaffolding need-

ed to reconcile the demands of the Confrontation Clause with the exceptions to the hearsay rule. The Second Circuit's later decision in *United States v. Medico*, 557 F.2d 309 (2d Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977), more closely reflects the current posture of the Supreme Court on the troubled relationship between the hearsay rule and the Confrontation Clause.

**7.** The Government agrees that certain statements in the Grand Jury testimony to the effect that Bennett knew more than he was telling the Grand Jury will be redacted for presentation at trial. Decision on the Government's request to admit the Grand Jury exhibits is reserved until trial.